## MBL Associates v. City of South Burlington
## Larkin-Milot Partnership v. City of
## South Burlington

[776 A.2d 432]

Nos. 00-073 & 00-074

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed June 29, 2001

*Dennis R. Pearson* and *Stephen R. Crampton* of *Gravel and Shea*, Burlington, for Plaintiffs-Appellees.

*Robert E. Fletcher* and *Joseph S. McLean* of *Stitzel, Page & Fletcher, P.C.*, for Defendant-Appellant.

**Skoglund, J.** In these consolidated appeals, the City of South Burlington challenges related judgments of the superior court in favor of plaintiffs MBL Associates and the Larkin-Milot Partnership. The City contends the court erred in concluding that plaintiffs were exempt from the City's recreation impact-fee ordinance. We affirm.

The material facts are undisputed. In 1993, the City's planning commission gave final subdivision map approval to Larkin-Milot's application for a planned residential development consisting of seventy-three single-family lots on the east side of Spear Street. A condition of approval required Larkin-Milot to pay $22,000, or the equivalent of $300 per unit, for construction of a recreation path on the property, which the City credited against the $200 per-unit recreation fee it then typically imposed on such projects. This condition of approval was memorialized in the planning commission's findings as follows:

> A credit of $22,000 should be given the applicant for construction of the portion of the proposed recreation path located outside of any public street [right-of-way]. . . . This translates to $300 per lot. Based on the current recreation impact fee of $200, the applicant would not pay a recreation fee since the credit is more than the actual fee. If in the future the City adopts a recreation fee of more than $300 per lot, then the applicant would be required to pay the difference.[1]

---

[1] The impact-fee arrangement was reflected in condition 5 of the final plat approval as follows: "The Planning Commission grants a credit of $300 per lot for construction of the portion of the proposed recreation path located outside of any public street right-of-way. This credit may be applied toward required recreation fees. At time of application for a

In January 1994, the City's planning commission also gave final plat approval to plaintiff MBL's application for a planned residential development consisting of 161 single-family lots and sixty multi-family units off of Dorset Street. As explained in its findings, the planning commission required MBL to construct a recreation path located outside of the public right-of-way, and provided that $75 per unit would be credited against "the recreation fee in effect at the time of permit." [2]

In January 1995, the City Council adopted an ordinance that imposed considerably higher recreation impact-fees than the $200 per-unit fee the City had customarily imposed in the past. Three months later, the City Council amended the ordinance to temporarily exempt certain subdivisions from payment of the higher fees. Under this so-called "grandfather clause," lots would not be subject to the new fees if they met three criteria: (1) the subdivision received final plat approval prior to January 9, 1995, "which subdivision approval contained a condition requiring payment of fees to the City for the purpose of funding recreation improvements"; (2) "the fees specified in the subdivision approval were paid to the City in accordance with the terms of the approval"; and (3) zoning permits issued for the development "on or before January 9, 2005."

Larkin-Milot began development late in 1995, and received twenty-one zoning permits over the course of two years, paying no recreation-impact fees because of the $300 per lot credit in its subdivision approval. Thereafter, the City's zoning administrator advised Larkin-Milot that it was required to pay the higher fees under the ordinance, less the $300 credit. Larkin-Milot appealed to the City Council, which affirmed the administrator. MBL also commenced development of its Dorset Street project after adoption of the ordinance. The zoning administrator assessed the fee specified in the ordinance, less a $75 per unit credit, for each zoning permit issued. MBL paid the fees under protest and appealed to the City Council, which upheld the administrator's assessment.

---

zoning/building permit, the applicant shall pay the difference between the recreation impact fee and the $300 per lot credit."

[2] The condition of approval provided, in full, as follows: "The Planning Commission approves a credit of $75 per residential unit for construction of the portion of the proposed recreation path located outside of the public street right-of-way. This credit may be applied toward required recreation fees. At the time of application for a zoning/building permit, the applicant shall pay the difference between the recreation impact fee and the $75 per unit credit."

In February 1998, Larkin-Milot filed this action for declaratory relief in the superior court, seeking a declaration that it was exempt from the fees under the grandfather clause of the amended ordinance. The City moved for summary judgment. In a written decision, the trial court denied the motion, concluding that Larkin-Milot's project satisfied the criteria set forth in the grandfather clause and, therefore, was exempt from the higher impact fees for any unit that received a zoning permit before the cutoff date of January 9, 2005. The court subsequently denied the City's motion to alter or amend, and issued a judgment granting the requested declaratory relief and ordering the City to refund monies previously collected under the ordinance.[3]

MBL filed a similar action against the City for declaratory relief, and the City moved for summary judgment. The trial court denied the motion for the same reasons stated in its earlier decision in the Larkin-Milot case, and entered judgment in favor of MBL. The City appealed both decisions, which we consolidated for review.

The City contends the trial court erred in concluding that plaintiffs' projects satisfied the first criterion of the grandfather clause requiring an approved subdivision with a condition for "payment of fees." The City's argument is two-fold. First, it claims that the projects failed to qualify for the exemption because the conditions of approval did not impose a dollar-specific fee, but rather provided for a "credit" against the impact fee "in effect" when the zoning permit was approved. Second, the City argues the subdivision approvals did not contain conditions for the "payment of fees," but rather payments in-kind, i.e., the construction of a recreation path.

■ ■ In construing the ordinance, we apply the usual rules of statutory construction. *Wesco, Inc. v. City of Montpelier*, 169 Vt. 520, 525, 739 A.2d 1241, 1245 (1999). Thus, if the meaning of an ordinance is plain, it will be enforced according to its terms, without resort to ancillary rules of construction. *Houston v. Town of Waitsfield*, 162 Vt.

---

[3] In 1998, three years after the City enacted the amended impact-fee ordinance, the planning commission amended the Larkin-Milot subdivision approval to delete the recreation-path construction provision and required the developer to dedicate a new recreation easement shifted to the west to meander through the center of the common land rather than adjacent to houses. In denying the City's motion to alter or amend, the court noted that the planning commission's decision to alter the Larkin-Milot conditions of approval did not operate to retroactively disqualify the project from the grandfather clause exemption, since it still plainly qualified as a subdivision that had received final plat approval prior to January 9, 1995, which approval contained a condition requiring payment of fees for funding recreation improvements.

476, 479, 648 A.2d 864, 865 (1994). Analyzed in this light, the City's arguments are unpersuasive. The ordinance contains no requirement — express or implied — that a qualifying subdivision approval contain a dollar-specific impact-fee assessment fee rather than one based on the fee in effect when the zoning permit issues. Nor is there any indication in the ordinance that an assessment through in-kind contributions — which the planning commission plainly considered to be the equivalent of impact fees — was meant to be excluded from the grandfather-clause exemption. Indeed, the ordinance itself treats fees and in-kind contributions as equivalent, conferring express authority on the planning commission to recommend "a credit against any impact fee levied under this ordinance for the value of 'In Kind' contributions." Although the City points to language in the grandfather clause referring to the "fees specified in the subdivision approval," this does not by its terms require a dollar-specific amount, nor does it preclude in-kind contributions characterized as fee equivalents in the planning commission findings, the conditions of approval, and the impact-fee ordinance.

■ The City next contends that even if the grandfather clause applies, its purpose was to reinstate the terms of the MBL and Larkin-Milot subdivision approvals requiring the payment of recreation impact fees — less the credit — "in effect" when the zoning permit issued. Thus, the City argues that plaintiffs remain subject to the higher fees for all zoning permits issued subsequent to the ordinance, despite application of the exemption. This argument also fails. The grandfather clause plainly exempts previously approved, qualifying subdivisions from payment of the higher impact fees for any zoning permit issued before the closing date of January 9, 2005. Nothing in the clause purports to incorporate the specific conditions of approval set forth in subdivisions previously approved by the planning commission. Since the City could have, but failed to include such a provision, it is not the Court's place to insert it. *Lecours v. Nationwide Mut. Ins. Co.*, 163 Vt. 157, 161, 657 A.2d 177, 180 (1995) (where legislature omitted limiting language from statute, "we are constrained not to rewrite [it]").

Although we rely on the plain terms of the ordinance, we note that this interpretation is also consistent with the record evidence indicating that the City's purpose in adopting the grandfather clause was to accord "fairness" to developers of approved subdivisions which — except for final building permits — had all plans and permits in place prior to enactment of the ordinance. Reimposing the substantially

higher fees on subdivisions the amended ordinance was designed to exempt — ostensibly under the terms of the exemption clause itself — defeats this purpose entirely.

■ The City also argues that the trial court failed to accord "proper weight" to the City Council's ruling that plaintiffs were subject to the higher fees under the ordinance. See *In re Duncan*, 155 Vt. 402, 408, 584 A.2d 1140, 1144 (1990) (court will sustain interpretation of statute by administrative body responsible for its execution absent compelling indication of error). Whatever deference was due to the City Council's ruling, its application of the higher fees to plaintiffs' projects was clearly erroneous, and properly reversed by the trial court.

■ Finally, the City contends the court erred in ordering the City to refund to MBL and Larkin-Milot all recreation impact fees collected under the ordinance. Having concluded that plaintiffs were exempt from payment of the higher fees under the ordinance, we find no basis for overturning those portions of the judgments requiring the City to refund to MBL and Larkin-Milot all "impact fee(s) collected by the City of South Burlington under Section 3(B) of the 1995 Ordinance." Plaintiffs, of course, remain subject to the original requirements set forth in the planning commission's findings and conditions of approval providing, in the case of Larkin-Milot, for a $300 credit against the customary $200 per-unit recreation impact-fee, and in the case of MBL, for a $75 credit against the customary $200 fee.[4]

*Affirmed.*

---

[4] Although the findings and final plat approval for the MBL project did not, unlike the Larkin-Milot project, expressly reference the $200 impact-fee in effect at the time, the City acknowledged in its statement of undisputed facts that this was the impact fee at the time of the final plat approval.